## MULLANPHY vs. RILEY.

| 10 | 489 |
|----|-----|
| 93a | 193 |

A. obtains judgment against B., after which B. dies. To satisfy the judgment, and release the lien upon the lands of B., after his death, his widow executes a note and mortgage. Held to be on sufficient consideration, the question as to the existence of the lien after the death of the debtor being one of doubt.

## ERROR to St. Louis Court of Common Pleas.

LEONARD & BAY, *for Plaintiff,* insist:

1. A note given by way of settlement, and to avoid the trouble, expense and risk of litigation, where the law is doubtful, and there is a difference of opinion, will not be held invalid for want of consideration. Longbridge vs. Dorrille, 5 B. & A., 117; 1 Leigh's Nisi Prius, 30; Brown vs. Sloan, 6 Watts, 421.

2. Damage, trouble, inconvenience or prejudice to the promisee, constitutes a good consideration, as benefit to the promisor. 2 Pet. Rep., 182; 5 Cranch, 142; 8 Mass.., 200; 6 Mass., 58; 4 Munf., 63; Johnson's Cases, 52; 1 Conn. Rep., 519; Chitty on Contracts, 25; Marks vs. Bank of Mo., 8 Mo. R., 316. Waiver of a legal right, at the request of another person, is a good consideration for a promise by him. 2 N. H., 97; 4 Pick., 97; 14 Johns. Rep., 466.

*Mullanphy* vs. *Riley.*

3. The facts presented in this case do not materially differ from those presented when the case was before this Court at the July term, 1844, (see same case, 8 Mo. R., 675) at which time the foregoing points were recognized as correct and applicable to the facts.

Since that decision, this Court has decided that the lien of a judgment is not lost by the death of the judgment debtor. Prewitt vs. Jewell, 9 *Mo.* Rep., 732. The instructions given on the part of the defendant were clearly erroneous:   •

1. Because the court instructed the jury that the lien of Mullanphy's judgment against Riley was extinguished by the death of the latter, thus making the case turn upon a point entirely im-material;

2. Because the jury were instructad to find for the defendant if they should believe from the evidence that the mortgage was executed by defendant to extinguish such supposed lien, she rely-ing upon the opinion of the plaintiff that such lien existed. Whether the lien existed or not, was immaterial. The only questions that could arise upon this point, were, 1st, Whether Mullanphy's opinion or representation was made in good faith; and, 2nd, Whether the question of the lien was one about which a reasonable doubt might be entertained.

GAMBLE & BATES, *for Defendant, insist:*

As to both the plaintiff's instructions, there is no foundation for either of them in the facts of the case, as stated in the bill of exceptions. They are inapplicable to the case, and could but tend to mislead the jury.

McBRIDE, J., *delivered the opinion of the Court.*

This was a petition to foreclose a mortgage, brought by Mullanphy against Riley in the St. Louis Court of Common Pleas. The defendant pleaded *nil debit,* and gave notice (under the statute) that upon the trial she would show a want of consideration for the making of the note and mortgage; and that the said note and mortgage were executed under an erroneous belief of indebtedness superinduced by the representations of the mortgagee, &c. On the trial, judgment was given for the defendant, when the plaintiff moved for a new trial, which being refused, he except-ed, and has sued out a writ of error.

To sustain the pleas, the defendant called upon the plaintiff to testify, who stated that he had obtained a judgment against John P. Riley, in his lifetime, for about the amount of the note mentioned in the mortgage, and the said Riley died, leaving the said judgment unsatisfied; that the de-fendant in this case, the widow of said decedent, and Joseph Walsh, fre-quently said the judgment should be paid; and finally the defendant, in order to lift the *cloud* or incumbrance of the judgment from the estate of her deceased husband, and in lieu of said judgment and the lien which it was supposed to create upon the real estate of the deceased, gave the plaintiff this note and mortgage. It was supposed by the witness that

the lien of the judgment extended over some real estate of the deceased, and was not extinguished by his death. He did not tell them so, but spoke of it to Joseph Walsh, or perhaps to both of them, as a disputed point; gave it as his own opinion that it was so. Walsh replied, by giving Mr. Gamble's opinion that it was not so; and said that he believed that there was no lien or occasion to pay; that Mr. Gamble had told them so, but that the debt ought to be paid, and they would pay it. The witness thought they were not willing to the lien. Joseph Walsh was the person with whom the conversations were chiefly held, and finally, witness urging a settlement, and saying that the widow might take her own time; the note and mortgage were brought to him by Walsh. When the note, which was payable in two years, became due, suit was brought.— Mrs. Riley sent for the plaintiff, and asked his advice, and wished to let judgment go to save costs; but he advised her not to do so, saying the land would sell low, and advised her to employ counsel and make the best defence she could, and to gain time, when the property would probably sell better. The witness further testified, that he had never presented his judgment for allowance in the Probate Court, against the estate of John P. Riley, but suffered the three years time allowed by law for the settlement of the estates of deceased persons to elapse, relying solely on said note and mortgage for his debt.

Mrs. Primm, also a witness for defendant, testified that she was the daughter of the defendant, Mrs. Riley, and was present at a conversation between the plaintiff and defendant, at the house of the latter, in the spring of the year 1841; thought it was the day before the execution of the note and mortgage in controversy. Mr. Mullanphy came in, and asked the defendant whether she had signed the papers; defendant said she had not; plaintiff then said that the papers were a note for the debt and a mortgage on four of the lots, (meaning lots in Riley's addition to St. Louis) which the defendant bought under a deed of trust executed subsequently to the plaintiff's judgment, by said Riley to Gamble; that the defendant might take her own time, and if she executed the note and mortgage, it would release her property from the judgment, which the said plaintiff held against her deceased husband; and if she did not execute the papers, the judgment would bind all her property.— That the defendant said she would consult Mr. Walsh, now deceased, and if he advised her to do so, she would execute the note and mortgage; that she understood that plaintiff had called on the defendant several times before touching the claim, and that the matter had been talked of at different times within three weeks before the execution of the mort-

gage, but she, witness, was not present at any of said conversations, except the one touching which she has testified as above. That Mr. Walsh was public administrator, and, as such, took upon himself the administration of the estate of John P. Riley. The witness further stated, on cross-examination, that Riley's addition, above alluded to, was made by her deceased father, John P. Riley, before his death, and that at the time of his death, he owned real estate; that the whole seventeen lots purchased by her mother, the defendant, were purchased at a sale made by Mr. Gamble, under a deed of trust given by her father before his death, but after the plaintiff, had obtained his judgment; and that it was claimed by plaintiff that the lien of his judgment extended to the whole of these lots. The witness being asked to state the language, as nearly as she could remember it, used by the plaintiff, in relation to the property and the judgment, said, that plaintiff said that the judgment bound all of her property, and that if Mrs. Riley would execute the note and mortgage, it would release the property; and if she did not, all the property would be bound.

This being all the evidence given in the case by the defendant, the plaintiff introduced Thomas B. Hudson, who testified that the body of the note and mortgage was in the hand writing of Joseph B. Walsh, above named. The note and mortgage having been previously given in evidence, the plaintiff then asked from the court the following instructions, to wit : If the jury find from the evidence that the plaintiff previous to the making of the note and mortgage, promised the defendant that if she would execute and deliver to him, said note and mortgage he would forego or relinquish his claim against the estate of John P. Riley, under his judgment against said Riley in his lifetime, and that the bond and mortgage were executed and delivered by the defendant to the plaintiff in consideration of that promise, and that the plaintiff did in consideration thereof forego or relinquish his said claim against said estate ; then the said note and mortgage are obligatory.

2nd. If the jury believe from the evidence that the said note and mortgage were given by the defendant in lieu of the plaintiff's judgment against her deceased husband, John P. Riley, and in satisfaction of whatever claim he might have thereby on the estate of said Riley, and that in consequence thereof the plaintiff forbore to prove up his judgment against said estate in the Probate Court, and suffered his claim to be barred by lapse of time, relying solely on said note and mortgage for his debt, they will find for the plaintiff.

Which the court refused to give. Thereupon the court instructed the jury, on the part of the defendant, as follows :—

The lien of Mullanphy's judgment against John P. Riley was extinguished by the death of said Riley. If the jury believe from the evidence that the plaintiff represented to the defendant, that such lien subsisted after the death of said John P. Riley, and that she was induced solely by this representation of the law by the plaintiff to her, to execute the note and mortgage in order to extinguish such supposed lien, and that she did not give the same in order to prevent said plaintiff from presenting his judgment for allowance, then the note and mortgage are without consideration.

The action of the court in refusing, and in giving instructions, were duly excepted to by the plaintiff.

This case has heretofore been before this court, and may be found in 8 vol. Mo. R., 675, and following. The only difference between the case then and now, is the evidence of Mrs. Primm, taken on the second trial. This evidence does not, however, materially vary the facts of the case, nor the principles of the law by which it must be governed. In the former decision of this case, the following legal principles were held : Any loss or injury sustained by the plaintiff at the request of the defendant, forms a good consideration to support a promise to pay, provided that promise be fairly obtained, and not by fraudulent representations, &c.— A valuable consideration is one, that is either a benefit to the party promising, or some trouble or prejudice to the party to whom the promise is made. 2 Kent's Com., 465. In addition to which, it may be stated, that the assignment of a debt, even of an uncertain amount, due from a third person, is a sufficient consideration. 2 Blk., 820. So is the release of an equity of redemption. 1 Ld. Raym., 662. So is the assignment of a chose in action. 4 B. & C., 528. So the giving up a suit instituted to try a question respecting which the law was doubtful, there being contrary decisions on the point, has been held to be a sufficient consideration for a promise to pay a stipulated sum. 5 B. & A., 117 ; 6 Watts, 421. It may not be amiss to quote at length the opinion of the court in the case referred to in 5 Barn. & Ald., 117, as the principle decided in that case, must to a great extent govern in the decision of the case now before us:

"Abbott, Ch. J.—I am of opinion that there is a sufficient consideration in this case to sustain the promise, without inquiring whether the owners of the ship are liable, under the circumstances of the case. It appears

that a suit had been instituted by the plaintiff in the court of Admiralty, against the Caroline Matilda, to compel her owners to make good the damage done by her running foul of another vessel. The ship might have been redeemed from that suit by the defendants giving bail, that proper care should be taken of the ship, and that those on board of her should not leave the Kingdom, until means were taken to secure that evidence which would have enabled the judge to decide the suit, and the plaintiffs might have insisted on such bail. The defendants as agents for the foreign owner of the ship, write a letter in which they engage on the plaintiffs renouncing all claims on the ship, and on proving the amount of damages sustained by the Zenobia, to indemnify them for any sum not exceeding £180, the exact amount to be ascertained when the Zenobia is repaired. Now the plain meaning of that engagement appears to me to be this : Release the ship, and we will waive all question of law and fact, except the amount of damage; we will pay you £180, if the damage done amounts to that sum. The plaintiffs by not insisting upon the bail required, therefore relinquished a benefit which they might have had, if the law had been with them. The law might fairly be consider-ed as doubtful, for there had been contradictory decisions on the subject, and the parties agree to put an end to all doubts on the law and the fact, on the defendants engaging to pay a stipulated sum. I am of opinion that this case is distinguishable from those cited in argument, inasmuch as in this case the law was doubtful, and the parties agreed to waive all questions of law and fact. I am therefore of opinion, that the plaintiffs ought to recover."

It is manifest from the testimony of the plaintiff, that he forebore pre-senting his claim against the estate of John P. Riley, to the Probate Court for allowance, until the same was barred by the statute, in consid-eration of the undertaking of the defendant to pay the same. If the de-fendant is not liable on her promise to pay, then the plaintiff is greatly damnified in his reliance on such promise, and his failure in consequence thereof to have his claim allowed. It is likewise shown from the evi-dence, that whilst the defendant gave it as his opinion, that his judgment against John P. Riley, was a lien on his real estate, a portion of which so bound, was purchased by the defendant, that he at the same time ad-vised her that a difference of opinion prevailed on the subject—and that she in point of fact, had been advised by other counsel, that the plaintiff's lien on the real estate of John P. Riley, was extinguished by his death.

Without undertaking now to decide whether the lien of Mullanphy

was extinguished by the death of John P. Riley, it is sufficient to say, that it was a question of doubt and uncertainty, and one about which jurists and lawyers might well differ in opinion. 9 Mo. R., 732. And therefore the promise of the defendant, to pay the judgment and release the lien, is not without consideration. So that whether the lien really existed or not, at the time the promise was made, is not, so far as the decision of this case is effected, of any importance.

Applying the foregoing principles to the case, we are of opinion that the court below should have given the instructions asked for by the plaintiff, and that the court erred in giving the instructions asked for by defendant. The judgment of the court of Common Pleas is reversed, and the cause remanded, Judge NAPTON concurring herein.

SCOTT, J., *dissenting.*

It is true that a compromise of a doubtful right, is a sufficient consideration to support a promise; but I do not concieve that the evidence proves any such contract between the parties. I do not see what compromise there was. The entire debt of Mullanphy was secured by the mortgage, and if all of it was to be paid, I cannot see that the manner of doing it was at all material. There being then no compromise of a doubtful right, and the judgment in my opinion being no lien on the land, the contract was without consideration and will not support an action.