FRANK I. CHENOWETH, Respondent, v. PACIFIC EXPRESS COMPANY, Appellant.

Kansas City Court of Appeals, March 3, 1902.

1. **Frauds and Perjuries:** COMPLETE PERFORMANCE: LAW: EQUITY: DEFENSE.  A complete performance of a contract by the promisee forecloses the promisor from interposing the statute of frauds as a defense, and the equity doctrine of part performance has no place in an action at law.

2. **Contracts:** MUTUAL PROMISES: CONSIDERATION: EXECUTORY.  Mutual and concurrent promises may be a consideration for each other and the fact that one is.executory makes it none the less binding.

3. ———: CONSIDERATION.  A contract must have a consideration such as a benefit or a waiver of a legal right or loss, trouble or inconvenience or a charge or obligation assumed; and the forbearance to sue on a claim is a sufficient consideration.

4. **Corporations:** ULTRA VIRES: CHARTER POWER.  A corporation may not employ its means for other purposes than for the le-

gitimate objects of its creation, but the defense of *ultra vires* is not open to a corporation where the contract is merely in excess of its power and not prohibited by the charter, especially where such contract has been fully performed by the other party.

5. ———: CONTRACTS: POWER OF SUPERINTENDENT. An express messenger was injured by the derailing of a train to which his car was attached. To prevent his suing the railroad company, the superintendent of the express company agreed that the company should pay him a monthly stipend during his natural life. This the company did for many years. But it was the only transaction of the kind the superintendent ever had and the company seems to have regarded the payment as a gratuity and not a contract obligation. *Held*, on review of the evidence, the superintendent had no authority to make the contract and the messenger can not maintain an action thereon.

Appeal from Jackson Circuit Court.—*Hon. Jas. H. Slover,*
Judge.

Reversed.

*B. P. Waggener* and *I. N. Watson* for appellant.

(1) The alleged contract is within the provisions of section 3418, Revised Statutes 1899. 8 American and Eng. Ency. of Law, p. 675, and cases cited. Kirkham v. Master, 2 Barn. & Ald. 613; Turner v. Hubbell, 2 Day (Conn.) 457; Musick v. Musick, 7 Mo. 495; Ackley v. Parmenter, 98 N. Y. 425; Rintoul v. White, 15 N. E. R. 321; 1 Reed Statute of Frauds, sec. 38; Watson v. Randal, 20 Wend. 201; Nelson v. Boynton, 3 Met. 396; Robinson v. Gilman, 43 N. H. 491, and cases cited; Mallory v. Gillert, 21 N. Y. 412; Gump v. Halberstadt, 15 Pac. 467; Stewart v. Campbell, 58 Me. 439; Hilton v. Dinsmore, 21 Me. 410; Martin v. Black, 20 Ala. 309; Harrington v. Rich, 6 Vt. 666; Smith et al. v. Easton, 54 Md. 139. (2) The contract set forth in the petition was *ultra vires* the corporation, because beyond the charter powers of the defendant. 4 Thompson's Commentaries on Law of

Corporations, sec. 5721; Bigelow on Estoppel (5 Ed.), 466 and 467; State ex rel. v. Murphy, 134 Mo. 567; Railroad v. Railroad, 101 U. S. 86; Central Transp. Co. v. Pullman Palace Car Co., 139 U. S. 24; Lucas Cashier v. Transfer Co., 70 Iowa 341; Rees Ultra Vires, secs. 46-72; Nat'l Home Bldg. Assn. v. Home Savings Bank, 49 Cent. Law Journal, 365; Bowen v. Bank, 94 Fed. Rep. 925. (3) There was no evidence showing authority in J. K. Johnson to make such a contract. There was no authority unless there was an implied authority from his position as superintendent of defendant. This is not sufficient. Brick Co. v. Schoeneich, 65 Mo. App. 228; 1 Morawetz on Private Corporations, secs. 423 and 499; Jones v. Morrison, 31 Minn. 140; Martin v. Black, supra; Pickering v. Stephenson, L. R. 14 Eq. 322; Lucas v. Transfer Co., supra; Bank v. Bank, 17 Mass. 28; Bank v. Johnson, 24 Me. 499; St. James Church v. Church, 45 Barb. 356; Hazard v. Durant, 11 R. I. 196; Hall v. Auburn Turnpike Co., 27 Calif. 256; Downing v. Railroad, 40 N. H. 235; McLellan v. Detroit File Works, 56 Mich. 579; Dodson v. Moore, 164 Ill. 110. (4) There was no consideration for the alleged contract: First. Because the undisputed testimony showed he never had a cause of action to release, and the court in effect so instructed the jury. 6 Am. and Eng. Ency. Law (2 Ed.), 742, and cases cited; Smith v. Easton, 54 Md., supra; 1 Parsons on Contracts (7 Ed.), p. 441 at top, and p. 470 at bottom; Chitty on Contracts (7 Ed.), 35-46; Hursh v. Byers, 29 Mo. 469; Paltrey v. Railroad, 4 Allen (Mass.) 55; Long v. Towl, 42 Mo. 548; Rintoul v. White, 108 N. Y. 222; Clapp v. Webb, 52 Wis. 638, 9 N. W. R. 796; Ruppe v. Peterson, 67 Mich. 437, 35 N. W. R. 82; Curtis v. Brown, 5 Cush. 491; Fulon v. Adams, 37 Vt. 401; Lawson on Contracts, sec. 39, and cases cited note 3; Appeal of Lukens (Pa.), 13 L. R. A. 581, 22 Atl. R. 892; Gould v. Armstrong, 2 Hall 266; Moon v. Martin, 122 Ind. 211, 23 N. E. R. 668; Gumming v. Royal, 59 Miss. 45; Bank v.

Concord, 15 N. H. 124; Cline v. Templeton, 78 Ky. 550; Smith v. Easton, supra; Palfrey v. Railroad, 4 Allen (Mass.) 55; O. etc. Ty. Co. v. Potter, 5 Ore. 228-232; Railroad v. Morley, 45 Mo. App. 304.

*Harkness, O'Grady & Crysler* for respondents.

(1) The statute of frauds is no defense whatever. Marks v. Davis, 72 Mo. App. 577; Bless v. Jenkins, 129 Mo. 647; Nowack v. Berger, 133 Mo. 24, 42; Self v. Cordell, 45 Mo. 345; Carney v. Carney, 95 Mo. 355. (2) The point that the plaintiff can not recover because the contract was *ultra vires* the corporation, can not be sustained, and it is unnecessary to go out of the State of Missouri on this proposition also. Farmers Bank v. McCabe, 73 Mo. App. 551; Smith v. Richardson, 77 Mo. App. 422; City v. Bank, 74 Mo. App. 365; Insurance v. Meese, 49 Neb. 861; Hill v. Coal Co., 119 Mo. 31; Drug Co. v. Robinson, 81 Mo. 18, 26; Welch v. Brewing Co., 47 Mo. App. 608; Glass v. Brewing Co., 47 Mo. App. 639; Belcher v. Elevator Co., 101 Mo. 192; St. Louis v. Gas Co., 70 Mo. 69; Smith v. Bank, 45 Neb. 444; Ehrhardt v. Robertson Bros., 78 Mo. App. 404; Gorder v. Plattsmouth, 36 Neb. 548. (3) The statute disposes of the question of implied authority. R. S. 1899, sec. 974. But the authorities in this State amply sustain the proposition that Johnson, under the evidence, had authority to make the contract in question. State ex rel. v. Railroad, 149 Mo. 104; Bank v. Hill, 148 Mo. 389; Preston v. Lead Co., 51 Mo. 43; Holmes v. Board of Trade, 81 Mo. 137; Winsor v. Bank, 18 Mo. App. 665; Bank v. Coal Co., 86 Mo. 138; 52 Mo. 492; Sparks v. Transfer Co., 104 Mo. 539, 540. (4) On the question of the consideration it is sufficient if the plaintiff has accepted it and relied upon it and did not bring his action against the Missouri Pacific Railway Co., in pursuance of the contract made with the defendant, and it is enough that relying upon it, he should have

lost his right to maintain an action against the Missouri Pacific Railway Co., and he did lose it and the statute of limitations has now run against his right to maintain any action against them.    This alone is sufficient consideration.    Adams v. Huggins, 78 Mo. App. 219; Mascolo v. Montesanto, 61 Conn. 50; Hammond v. Cook, 25 Vermont 295; Cross v. Richardson, 30 Vermont 641; Lemaster v. Burkhardt, 5 Ky. 30; Hansomber v. Mulphren, 90 Hun. 589; Mulanphy v. Riley, 10 Mo. 489; Russell v. Daniels, 37 Pac. 726; Doan v. Dow, 35 N. C. 709; Dry Goods Co. v. Goss, 65 Mo. App. 55; Magoffin v. Railroad, 102 Mo. 540; Mellor v. Railroad, 105 Mo. 455; Jones v. Railroad, 125 Mo. 666; Hipsley v. Railroad, 88 Mo. 348.

SMITH, P. J.—The defendant is a corporation organized under the laws of the State of Nebraska.    The Missouri Pacific Railway Company is a corporation organized under the laws of the same State.

The plaintiff was employed by the defendant in the capacity of messenger, and while in charge of one of its cars, the train to which it was attached was derailed in the State of Nebraska by the wrongful and criminal conduct of persons not in the employment of said railway, and that in consequence of such derailment, the plaintiff was severely and permanently injured.    Sometime after the plaintiff received his injuries, the defendant, by its general superintendent, entered into a parol contract with him whereby the said superintendent promised him (plaintiff) that if he (plaintiff) would not sue the said railway company on account of his injuries, that defendant would pay him seventy-five dollars per month during the remainder of his life; that the plaintiff thereupon accepted the said proposition; that the defendant thereafter continued to make the monthly payments according to said contract for fifteen years and then refused to make further payments. The plaintiff never brought suit against the railway company.

When the defendant refused to make further payments, the plaintiff brought this suit on said contract to recover damages for the breach thereof. The plaintiff had judgment in the trial court and the defendant appealed.

I. At the commencement of the trial the defendant objected to the introduction of any evidence under the allegations of the petition on the ground that the contract therein alleged, not being in writing, was within the statute of frauds. R. S. 1899, sec. 3418. As we understand it the plaintiff's insistence is that the contract is excepted out of the operation of the statute of frauds for the reason that it has been freely performed on his part, and partly on that of the defendant. It is not disputed but that the plaintiff has never instituted any action against the said railway company for the recovery of damages for the injuries received by him in consequence of the derailment of the said train, and that his right of action, if any he had against the railway company, has long since been extinguished by the operation of the statute of limitations. The abandonment of his right of action has by the lapse of time become permanent and perpetual. It seems to us that there has been full and complete performance of the contract on the part of the plaintiff. Notwithstanding this, the defendant has discontinued the monthly payments required by the contract, and so has only partly performed it on its part. Whether or not the full performance of the contract by the plaintiff is sufficient to take it out of the operation of the statute is one of the vital questions brought before us by appeal.

It is manifest that the contract in issue could not be performed within a year. The plaintiff at the time the contract was entered into was a young man who had just attained his majority, and according to the Northhampton and Carlisle tables, the probable duration of his life would be many years. The defendant, under the contract, was obligated to continue making payments during those years, so that it is quite obvious

that the contract was not to be performed within a year from the making thereof, and it is therefore obnoxious to the statute of frauds, unless something can be shown to take it out of the operation of that statute. The last expression of the Supreme Court is to the effect that "the complete performance of the contract by one contracting party forecloses his adversary from interposing the statute of frauds as a defense." Bless v. Jenkins, 129 Mo. loc. cit. 657. Judge ROMBAUER, in Johnson v. Reading, 36 Mo. App. loc. cit. 315, declared that "it was deducible from all the cases decided in this State touching contracts falling within the various sections of the statute of frauds, that where the contract has been fully performed on one side, and the other party had the benefit of such performance, recovery may be had on the contract itself. Pitcher v. Wilson, 5 Mo. 46, alone being opposed to this view." Johnson v. Reading was certified to the Supreme Court (Nally, v. Reading, 107 Mo. 350), where the view which had been expressed by Judge ROMBAUER in certifying the case there was approved, with the remark that "If there are any authorities in conflict with the views here announced, *we overrule them.*" We take it that Pitcher v. Wilson, though occasionally cited, has been overruled. It is certainly out of line with the more recently decided cases, among which may be cited Nowack v. Berger, 133 Mo. 24; Bless v. Jenkins, ante; Nally v. Reading, ante; McConnell v. Brayner, 63 Mo. 461; Self v. Cordell, 45 Mo. 345; Marks v. Davis, 72 Mo. App. 562; Smock v. Smock, 37 Mo. App. 66; Johnson v. Reading, 36 Mo. App. 315. The rule in equity respecting the doctrine of part performance has no place in an action at law, as in the present case. The following are some of the cases illustrating the application of the rule in equity cases: Carney v. Carney, 95 Mo. 353; Sharkey v. McDermott, 91 Mo. 647; Anderson v. Shockley, 82 Mo. 250; West v. Bundy, 78 Mo. 407; Gupton v. Gupton, 47 Mo. 37.

The defendant contends that the contract under review is but one of mutual concurrent promises where each constitutes a consideration for the other, and therefore no action can be maintained on it until there is performance on both sides. But the decision in Nally v. Reading, and the other cases cited deciding that where there is full performance on one side, the contract is taken out of the statute, is fatal to the defendant's contention. It is true that in Bissig v. Britton, 59 Mo. 204, Glenn v. Lehnen, 54 Mo. 45, Musick v. Musick, 7 Mo. 495, and Walther v. Merrell, 6 Mo. App. 371, were each cases wherein the action was on an undertaking collateral to the original promise. In this case the undertaking of the defendant was not collateral but original, but whether one or the other, the cases just cited, which are relied on by defendant, decide nothing contrary to those cited by us at the outset, for in neither of them was the point, that the contract sued on had been fully performed on the part of the plaintiff, in any way raised or determined.

But the defendant further insists that there was no supporting consideration for the promise made by it to the plaintiff. The evidence presented by the record discloses that the contract between the plaintiff and defendant was something like this: The defendant said to the plaintiff: "If you will not sue the Missouri Pacific Railway Company, I will pay you seventy-five dollars a month as long as you live;" to which plaintiff responded "All right." The promises thus made were mutual and concurrent, or a promise for a promise. Where one person says to another, "I will promise to do a particular thing if you will promise to do a certain other thing," there is a contract, if this is agreed to by such other. Promises to lend support to each other must be simultaneous and reciprocally dependent. The consideration for a promise is executory where it is a promise given in return to do something in the future, but it is none the less valid because of its executory character. German v. Gilbert, 83 Mo. App. loc. cit.

418, and authorities there cited.

The general rule is that in order to support an action, the promise must have been made upon a legal consideration moving from the promisee to the promisor: there must be either benefit to the maker of the promise or the waiver of some legal right, a loss, trouble or inconvenience to, or a charge or obligation resting upon, the party to whom the promise is made.   German v. Gilbert, ante; Given v. Corse, 20 Mo. App. 132; Brownlow v. Wollard, 66 Mo. App. 636; Houck v. Frisbee, 66 Mo. App. 16; Winter v. Cable Co., 73 Mo. App. 173; Block v. Elliott, 1 Mo. 275; Halsa v. Halsa, 80 Mo. 303; Carr v. Card, 34 Mo. 513; Hudson v. Busby, 48 Mo. 35; Williams v. Jensen, 75 Mo. 681.   And so it is said in some of the elementary books that consideration means not so much that one party is profited as the other abandons some legal right in the present or limits his legal freedom of action in the future as an inducement for the act or promise for the first.   It does not matter whether the party accepting the consideration has any actual benefit thereby or not.   It is enough that he accepts it and that the party giving it does thereby undertake some burden or lose something which in contemplation of law is valid.   Webbs-Pollock on Contr., 167; Beach on Contr., sec. 5, note 1.   And it has been ruled in this jurisdiction that a promise is a sufficient consideration for a promise.   Moss v. Green, 41 Mo. 389; Lindell v. Rokes, 60 Mo. 249.   In bilateral contracts, as here, a promise to do a thing is just as valuable a consideration as the actual doing of the thing would be. German v. Gilbert, ante.

It has been held that the giving up of a suit instituted to try a question respecting which the law is doubtful, there being contrary decisions on the point, is a sufficient consideration for a promise to pay a stipulated sum.   5 Barn. & Atl., 117; Mullanphy v. Riley, 10 Mo. 489.

Vol 93, app—13.

It seems to us clear enough that as the plaintiff, by his promise, foreclosed his right to sue the railway company, that this, within the meaning of the authorities just referred to, constituted a sufficient consideration for the promise of the defendant, whether or not the acceptance of the consideration was of any benefit or advantage to it. No reason is seen why the conceded fact that the defendant continued to perform its promise until the plaintiff's right to sue the railway company had become barred by the statute of limitations, does not justify the indulgence of the presumption that the plaintiff's forbearance to sue said railway company was not of some benefit or advantage to the defendant.

Again the petition disclosed facts sufficient to constitute a cause of action against the railway company. The plaintiff, in legal contemplation, was a passenger on the train of the said railway company (Jones v. Railroad, 125 Mo. 666), and this fact coupled with the further fact, that without his fault, he was injured in consequence of the derailment of that train, made out a prima facie case for him. Guffey v. Railroad, 53 Mo. App. 462; Hipsley v. Railroad, 88 Mo. 348; Lemon v. Chanslor, 68 Mo. 341. And, therefore, in passing upon the question as to the validity of the contract alleged in the petition, it will not do to say that the plaintiff by his promise abandoned or waived no legal right which he then had. We do not think that in any view that may be taken of the case, the action of the trial court in overruling the defendant's objection to the introduction of any evidence under the allegations of the petition, ought to be condemned.

II. The defendant further insists that the contract alleged in the petition was *ultra vires* and, therefore, the court erred in overruling its objections based on that ground to the introduction of any evidence. The defendant is a corporation organized under the statutes of the State of Nebraska, and as appears from its articles of incorporation introduced in evidence, is authorized to transact the business of transporting

money, goods, merchandise and property in the State of Nebraska and elsewhere in the United States, etc. It is conceded that the statute of Nebraska interdicts any corporation from employing its funds for any other purpose, directly or indirectly, than to accomplish the legitimate objects of its creation. And this doubtless would be the law without such statute. Bank v. Carh, 13 Pet. (U. S.) 519; Railroad v. Kneeland, 4 How. (U. S.) 19. And it may be assumed, nothing appearing to the contrary, that the defendant has complied with the Act of April 21, 1891 (Laws 1891, p. 75), and is, therefore, entitled to the enjoyment in this State of all the rights set forth in its articles of incorporation. In this State it is provided by statute (section 1024, Revised Statutes), that no foreign corporation shall engage in any business other than that expressly authorized by its charter.

The question now to be determined is whether or not the defendant can escape liability on the contract in issue on the ground that such contract was entered into by it in excess of its charter powers. Where a contract entered into by a corporation is unauthorized by its charter and void as against public policy, specific performance will not be decreed by a court of equity. Railroad v. Seely, 45 Mo. 212. Nor will compliance on its part in such case be enforced by mandamus. State v. Murphy, 134 Mo. 548. In Thompson's Commentaries on the Law of Corporations, section 6016, it is stated that the great mass of judicial authority seems to be to the effect that where a private corporation has entered into a contract in excess of its granted powers and has received the fruits or benefits of the contract, and an action is brought against it to enforce the obligation on its part, it is estopped from setting up the defense that it had no power to make it. It is, we think, quite well settled in this State that the defense of *ultra vires* is not open to a corporation in a case like this where the contract, though in excess of its charter power, is not expressly prohibited by law and has been fully executed on the part of the other con-

tracting party. City of Goodland v. Bank, 74 Mo. App. 365; Grohmann v. Brown, 68 Mo. App. 630; Winscott v. Investment Co., 63 Mo. App. 367; Welsh v. Brewing Co., 47 Mo. App. 608; Glass v. Brewing Co., 47 Mo. App. 641; Dairy Co. v. Mooney, 41 Mo. App. 665; Lysaght v. Association, 55 Mo. App. 538; Drug Co. v. Robinson, 81 Mo. 26. And a like rule prevails in other jurisdictions. Northampton County's Appeal, 6 Casey 305; Insurance Co. v. McClelland, 9 Colorado 11; Loan Co. v. Morris, 43 Kan. 282; Durham v. Mining Co., 22 Kan. 169; Kennedy v. Bank, 7 Neb. 59; White v. Bank, 39 Mass. 181; Allegheny City v. McClurkam, 14 Pa. St. 81; Dewey v. Railroad, 91 Mich. 351; Arms Co. v. Barlow, 63 N. Y. 69.

But it is contended that this rule has been overthrown by the ruling made by the Supreme Court in State v. Murphy, 134 Mo. loc. cit. 566, 567, but in this contention we do not concur. It will be seen that was a proceeding to compel an officer of the city to perform an act which he declined because certain ordinances of the city were, as he claimed, void. The cause was submitted to one division of the court, and the judge who delivered the opinion sustaining the contention of the officer and refusing the writ, quotes approvingly an excerpt from the opinion in Railroad v. Railroad, 118 U. S. 317, to the effect that "we know of no well-considered case where a corporation which is a party continuing a contract which it had no power to make, seeks to retract and refuses to proceed further, can be compelled to do so," and also from pages 466, 467 (5 Ed.), of Bigelow on Estoppel. State v. Murphy is, we think, to be distinguished from the present case. In that case it was sought to compel by mandamus the officer of the city to perform an official act to enable a party to do certain work in a street which had been authorized by the void ordinance, while the contract here, though in excess of the power of the charter of the corporation, has been fully performed by the other party. The question of complete performance did not and

could not arise in a case of that kind as in this. But by a further reference to the report of that case it will be seen there were two opinions delivered by the same judge, and that the court, in banc, adopted the latter in which the excerpts to which we have referred do not appear, so that it can be said that the opinion in which the said excerpts do appear is not that of the court, and for that reason we are not required to follow it.

Whatever may be the proper rule in these cases where an *ultra vires* contract is entered into by a public corporation, exercising governmental functions, we do not think in cases like the present where the contract is entered into, though in excess of the charter powers of the corporation, has been fully performed by the party seeking its enforcement, that the corporation can refuse to proceed, and when sued for a breach of the contract, shelter itself behind the defense of *ultra vires*. And this is so for still another reason. It has been expressly declared by the Supreme Court of this State that the question of *ultra vires* can only be raised in a direct proceeding by the State against the corporation, and not in a collateral proceeding by another, except where the charter of the corporation, not only specifies and, therefore, limits it to the business in which it may engage, but by express terms, or by fair implication from its terms, invalidates transactions outside of its legitimate corporate business. Drug Co. v. Robinson, 81 Mo. loc. cit. 26, and cases there cited; Hill v. Coal Co., 119 Mo. 31; Insurance Co. v. Smith, 117 Mo. 261. In the last-cited case it was said that this doctrine applies to all classes of actions and in every variety of cases.

By the statute of Nebraska the defendant is prohibited from engaging in any other business than that specified in its charter, still we discover nothing in its charter or the general law, that expressly or by necessary implication, declares invalid any transaction outside the limits of its charter powers. And so we must conclude that the defense of *ultra vires* was not open to the defendant and that the trial court did not err

in so holding.   In Smith v. Richardson, 77 Mo. App. 422, it was said: "No corporation can bind itself or its stockholders by a contract expressly prohibited by its charter or the general law.   Such contracts are strictly *ultra vires* and create no obligation as far as they are executory, although the consideration therefor may have been received and enjoyed by the corporation.   On the other hand, an act or contract merely in excess of the power granted to corporations, but which is not expressly forbidden either by its charter or the general law of the State, although lacking affirmative authority for its performance on account of the silence on the subject, of its charter or the general law, may yet, if the contract has been executed by the other party and the consideration received by the corporation, bind the latter on the principle of estoppel so that it could not be annulled by the corporation without a return of the consideration received."   The distinction thus drawn between contracts *ultra vires* the corporation and those where only in excess of the corporate grant of power is made quite clear.   The contract here is not, strictly speaking, *ultra vires,* but rather is in excess of the defendant's charter grant of power, and it must, therefore, fall within the principle just stated as applicable to contracts of the latter class.   Keeping in mind this distinction, it will be seen that the cases, of which the city of Goodland v. Bank, 74 Mo. App., ante, is a representative, are not out of line with State v. Murphy, ante. The contracts in the former were merely in excess of the corporate grant of power, while in the latter it was *ultra vires.*

III.   The defendant's further insistence is that Johnson, its general superintendent, who entered into the contract sued on, had no express or implied authority from it to do so.   It is clear that the evidence discloses no express authority of that kind.   If he had such authority it must have existed by presumption or implication. Officers of corporations are to be considered as having authority usually incident to their offices. The general doctrine is that certain powers usually exercised

by certain officers of business corporations, are presumed to exist in them, and that the public in dealing with such corporations have the right to act upon this presumption until the contrary fact is disclosed. The officers to whom this implication extends are those in private corporations organized for private pecuniary gain, as for example, such as general managers and the like. It is a fundamental principle that a principal can be bound only by the authorized acts of his agent. The authority may be proved by the instrument creating the agency, and beyond the terms of the instrument or verbal commission by it may be shown that the principal has held the agent out to the world in other instances as having the authority which will embrace the act in question. And this is the only mode by which a controverted power can be established. The power of an agent may be proved by his having habitually exercised certain powers as agent with the adoption or recognition of the corporation or its superior agents. Thompson on Corp.; secs. 4876 to 4882. And where an officer of a corporation openly exercises a power which presupposes a delegated authority for the purpose, and the corporate acts show that the corporation must have contemplated the legal existence of such authority, the acts of such officer will be deemed rightful and the delegated authority will be presumed. Where an agent in the conduct of the business of the corporation exercises certain powers continuously and publicly, an implication arises that he was duly authorized to exercise such powers. Fayles v. Insurance Co., 49 Mo. 380; Stothard v. Aull, 7 Mo. 318. And so the rule has been stated to be that one man can never be made responsible for the acts of another unless he has (1) clothed him with power to do those acts, or (2) clothed him with power to do acts which include those acts, or (3) allowed him through negligence or otherwise to possess, in the face of the public, the appearance of such power. Thompson on Negl., sec. 4884.

This contract was, so far as the evidence shows, the only one of the kind ever entered into by him during his entire employment by defendant. There is no fact or circumstance shown in evidence from which the authority so exercised by him in this single instance can be implied. Nor does it appear that there was any recognition by the defendant of the act. The other officers, including the president, who were engaged in the actual management of the business of the corporation, for many years after the contract was entered into by Johnson, all testified that they never heard of the contract until after the discontinuance of the monthly payments to plaintiff. They testified that they supposed the payments were made as a mere gratuity or charity. If the contract was even one which the corporation could ratify, there is not the slightest evidence of such ratification. We know of no principle of law, applicable to the facts disclosed by the evidence, under which it can be claimed that Johnson was authorized to enter into said contract and thereby bind the defendant. There is nothing in the record before us which would justify us in considering he had any such authority, and for that reason we think there was no sufficient evidence to justify a submission of the case to the jury. Indeed there was such a total lack of evidence touching the authority of Johnson as made it the duty of the court, as a matter of law, to have declared that the plaintiff was not entitled to recover.

Accordingly the judgment must be reversed. All concur.